UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JOHN SHOOPS,

                **Plaintiff,**          **CIVIL ACTION NO. 18-cv-10444**

         **v.**                   **DISTRICT JUDGE NANCY G. EDMUNDS**

**COMMISSIONER OF**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

             **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Michael John Shoops seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 17). Plaintiff has also filed a reply brief in support of his Motion for Summary Judgment. (Docket no. 18.) With leave of court, the parties have filed supplemental briefing regarding new case law decided after Plaintiff filed his Motion for Summary Judgment in this case, *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018) and *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669 (6th Cir. 2018), which Plaintiff contends "represents a significant change in the controlling law" and "directly implicates the outcome of this case." (*See* docket no. 19 at 4, 6; docket nos. 20, 21.) Plaintiff filed an additional supplemental brief in reply to Defendant's supplemental brief, albeit without leave of court, and the parties have also filed notices of recently-issued decisions related to the issue raised in the supplemental briefing. (Docket nos. 22, 23, 24, 25.) This case has been

referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.      RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 17) be **GRANTED**.

## II.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on October 27, 2016, alleging that he has been disabled since July 3, 2015, due to conditions related to his vagus nerve, feet, and heart.  (TR 164, 361-74, 400, 405.)  The Social Security Administration denied Plaintiff's claims on March 7, 2017, and Plaintiff requested a *de novo* hearing.  (TR 208-37, 292-94.)  On August 31, 2017, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Nicole Quandt.  (TR 179-207.)   The ALJ subsequently issued an unfavorable decision on September 18, 2017, and the Appeals Council declined to review the ALJ's decision.  (TR 1-6, 164-74.)  Plaintiff then commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 13 at 10-14) and the ALJ (TR 169-72, 174) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony.  Defendant set forth a short paragraph of facts and otherwise adopts the ALJ's recitation of the facts.  (Docket no. 17 at

4-5.)  Having conducted an independent review of Plaintiff's medical record and the hearing

transcript, the undersigned finds that there are no material inconsistencies between Plaintiff's and

the ALJ"s recitations of the record.  Therefore, in lieu of re-summarizing this information, the

undersigned will incorporate the above-cited factual recitations by reference and will also make

references and citations to the record as necessary to address the parties' arguments throughout

this Report and Recommendation.

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the

alleged onset date of July 3, 2015, and that Plaintiff suffered from the following severe

impairments: history of vargus [sic] nerve dysfunction, heart disorder, history of foot injury

(bilateral), depression, anxiety, and history of substance abuse.  (TR 166.)  The ALJ also found

that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 166-68.)  The ALJ then found that Plaintiff

had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform sedentary work as
> defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant is limited
> to lifting/carrying and pushing/pulling up to 10 pounds occasionally and less than
> 10 pounds frequently and is limited to sitting up to 6 hours and standing/walking
> up to 2 hours during an 8-hour workday.  The claimant also requires the opportunity
> to alternate, at will, between sitting for 15 minutes and standing for 5 minutes
> throughout that day.  Furthermore, the claimant is able to climb ladders, ropes or
> scaffolds occasionally, stoop frequently and crouch frequently.  The claimant is
> never able to work at unprotected heights or with moving mechanical parts.  In
> addition, the claimant is limited to simple, routine tasks and simple work-related
> decisions.

(TR 168-73.)  Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ

determined that Plaintiff was capable of performing a significant number of jobs in the national

economy.  (TR 173-74.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from July 3, 2015, through the date of the decision.  (TR 164, 174.)

## V.      LAW AND ANALYSIS

### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the

decisionmakers can go either way, without interference by the courts").  "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) "[t]he court is unable to provide meaningful review because the ALJ failed to explain her reasoning for the conclusions made in her decision;" (2) "[t]he ALJ erred by discounting the opinions of Plaintiff's former treating psychiatrists in favor of the opinion of a non-treating, non-examining, state agency consultant;" (3) "[t]he ALJ failed to properly address Plaintiff's bilateral foot condition;" and (4) "the original administrative proceeding was held before an Administrative Law Judge who was not properly appointed pursuant to the appointments clause of the constitution."  (Docket no. 13 at 4, 7, 19-31, docket no. 20 at 2, 4-8.)

### 1.    The Sufficiency of the ALJ's Explanations at Steps Two and Three of the Sequential Evaluation Process

Plaintiff argues that the ALJ's decision is patently deficient and that the court is unable to conduct a meaningful review thereof because the ALJ provided no explanation for her

determination at step two of the sequential evaluation process and the ALJ failed to adequately explain her determination related to Plaintiff's mental impairments at step three.  (Docket no. 13 at 19-24; docket no. 18 at 4-6.)  Plaintiff points out that the sentence "**[EXPLAIN WHY THE ABOVE IMPAIRMENT(S) IS SEVERE]**" appears in the place of any explanation at step two. (Docket no. 13 at 20 (citing TR 166).)  And the sentence "**[EXPLAIN HOW EVIDENCE SUPPORTS THIS DEGREE OF LIMITATION]**" appears four times in the ALJ's analysis of Plaintiff's mental impairments at step three.  (TR 167; *see also* TR 168.)  Defendant explains that the ALJ plainly failed to delete the instructions from the agency's decision template and argues that Plaintiff has failed to show that the ALJ was required to provide any greater explanation at steps two and three.  (Docket no. 17 at 6-14.)

a.   Step Two

At step two of the sequential evaluation process, the ALJ found that Plaintiff had the following severe impairments:  history of vargus [sic] nerve dysfunction, heart disorder, history of foot injury (bilateral), depression, anxiety, and history of substance abuse.  (TR 166.)  Plaintiff argues that "[t]he ALJ's failure to explain why she found these impairments to be severe, and perhaps more importantly, why she found other documented impairments to be non-severe, renders the decision patently deficient."  (Docket no. 13 at 20.)  Plaintiff asserts that he suffers from other conditions that the ALJ did not consider at step two, including hypothyroidism, hypotension, bipolar disorder, a history of chronic headaches, and neuropathy.  (*Id.* at 21-22.)  Plaintiff argues that the ALJ's failure to explain why she did not consider these impairments to be severe or whether she considered any limitations related thereto in the assessment of Plaintiff's RFC constitutes reversible harmful error.  (*Id.* at 22.)

A severe impairment or combination of impairments is one that significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). But the step-two severity analysis is simply a threshold determination. It is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps," and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims. *Anthony*, 266 F. App'x at 457. Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Plaintiff has not cited any regulation or binding authority that specifically requires an ALJ to provide a certain amount or quality of explanation for the determination at step two of the sequential evaluation process. However, to the extent that an ALJ's failure to provide an explanation at step two is erroneous, any error committed by the ALJ in this case is harmless because the ALJ considered all of Plaintiff's impairments, including those she did not mention at step two, in her assessment of Plaintiff's RFC. Specifically, the ALJ noted that records from Plaintiff's treatment at Genesys Medical Center in April 2016 indicated that Plaintiff's symptoms

appeared typical for a vasovagal event and were likely influenced by other factors including Plaintiff's hypothyroidism, marijuana use, and frequent plasma donations causing hypovolemia. (TR 169.)  The ALJ also considered Plaintiff's records from Plaintiff's visit to Genesys Medical Center in July 2016 and noted that Plaintiff was discharged with diagnoses of atypical chest pain, likely nonischemic, dizziness with recurrent transient hypotension, asymptomatic sinus bradycardia, possible obstructive sleep apnea, hypothyroidism, generalized anxiety disorder, and cocaine use.  (TR 170.)  The ALJ also discussed the treatment records provided by Plaintiff's podiatrist, Jeffery Noroyan, DPM, including Dr. Noroyan's note that Plaintiff was experiencing mild neuropathic discomfort in the ball of his foot.  (TR 170.)  Additionally, the ALJ noted that Plaintiff was diagnosed with migraines during his inpatient treatment at Arrowhead Behavioral Health in July 2015.  (TR 171.)  And finally, the ALJ discussed the records related to Plaintiff's inpatient treatment at McLaren Medical Center in September 2015 for increased symptoms of depression and noted that Plaintiff's psychiatrist diagnosed him with bipolar disorder.  (TR 171.)  It is therefore legally irrelevant that the ALJ did not indicate whether these impairments were severe or non-severe, with or without proper explanation at step two of the sequential evaluation process.  Accordingly, under *McGlothin* and *Maziarz*, Plaintiff's step-two challenge fails.

To the extent that Plaintiff argues that the ALJ failed to properly consider his hypothyroidism, hypotension, bipolar disorder, headaches, and neuropathy in assessing his RFC, Plaintiff's argument lacks merit.  Plaintiff bears the burden of proving the existence and severity of limitations caused by his impairments through step four of the sequential evaluation process. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Her*, 203 F.3d at 391. Accordingly, it is Plaintiff's burden to prove that he has a more restrictive RFC than that assessed by the ALJ.  *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citing *Her*,

203 F.3d at 392).  Plaintiff, however, does not indicate what additional functional limitations the ALJ should have assessed to account for these impairments.  Moreover, Plaintiff cites no medical evidence to show that he has any limitations related to these impairments.  Plaintiff has not met his burden in this regard.

b. <u>Step Three</u>

Plaintiff challenges the ALJ's explanation for her determination at step three of the sequential evaluation process that Plaintiff's mental impairments pose only mild to moderate limitations.  (Docket no. 13 at 22-24; docket no. 18 at 5-6.)  At the third step of the sequential evaluation process, a claimant will be deemed presumptively disabled and eligible for benefits if his impairment meets or medically equals one of the listings in the Listing of Impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  A claimant must satisfy all of the criteria to meet a listing, or have impairments that are medically equivalent to or equal in severity and duration to the criteria of a listed impairment.  *Id.*; *Rabbers v. Comm'r,* 582 F.3d 647, 653 (6th Cir. 2009).  It is the claimant's burden to demonstrate that he meets or equals a listed impairment at the third step of the sequential evaluation process.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.").  "When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review."  *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)).

Here, the ALJ found that the severity of Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 and 12.06.  (TR 167-68.)  Specifically, in evaluating the "paragraph B" criteria of these listings, the ALJ found that Plaintiff's mental impairments posed only mild to moderate limitations:

> In understanding, remembering, or applying information, the claimant has mild limitations.  **[EXPLAIN HOW EVIDENCE SUPPORTS THIS DEGREE OF LIMITATION]**  The record does not establish marked limitations in this area, due to the claimant's mental impairments.  Overall, the undersigned finds that the claimant's mental impairments have resulted in a mild level of impairment in this area and that he retains the capacity for simple, routine work, as described in the established residual functional capacity.

> In interacting with others, the claimant has moderate limitations.  **[EXPLAIN HOW EVIDENCE SUPPORTS THIS DEGREE OF LIMITATION]**  The record does not reveal significant limitations in this area, such as difficulty interacting with others or large groups.  The record also does not suggest marked problems getting along with others.

> With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitations.  **[EXPLAIN HOW EVIDENCE SUPPORTS THIS DEGREE OF LIMITATION]**  The medical evidence of record reveals symptoms of depression, anxiety and continued pain symptoms, which could be expected to cause a moderate level of limitation with regard to this area.

> As for adapting and managing oneself, the claimant has experienced moderate limitations.  **[EXPLAIN HOW EVIDENCE SUPPORTS THIS DEGREE OF LIMITATION]**  The claimant's [sic] continues to engage in substance abuse. However, the record also does not reveal a history of recurrent exacerbation of symptoms and he appears capable of managing his own medical care and personal care.

(TR 167-68.)

Plaintiff's step-three argument directly relates to the undeleted template instructions – he argues that the ALJ failed to explain why the medical evidence supports her conclusions.  (Docket no. 13 at 22-23.)  He further argues that this alleged error "permeated" throughout the rest of the ALJ's decision, particularly when the ALJ discounted the opinions of Plaintiff's treating psychiatrists on the basis that the record documented only a moderate level of impairment due to

Plaintiff's mental impairments. (*Id*. at 23 (citing TR 172).) According to Plaintiff, this alleged error renders the ALJ's decision unreliable and prevents the court from conducting a meaningful review. (*Id*. at 22-23.)

The ALJ's explanations for finding that Plaintiff had only mild to moderate limitations in the "paragraph B" criteria as a result of his mental impairments are not models of excellence, as the ALJ failed to cite any record evidence in support of her findings, which is highlighted by the undeleted template language. However, the ALJ's findings are based on an absence of record evidence to support marked or significant limitations in the first two criteria, so the ALJ's failure to cite any medical evidence related to those findings is not illogical. Additionally, the ALJ provides brief, but sound, explanations for her findings related to the last two criteria. Notably, Plaintiff has not cited to any record evidence to show that the ALJ's findings in this regard are flawed or inaccurate. Accordingly, the undersigned is not convinced that the ALJ's explanations are insufficient under *Christephore, supra*.

Moreover, "[t]he Sixth Circuit has expressly declined to adopt a blanket rule that remand is required whenever an ALJ 'provides minimal reasoning at step three of the five-step inquiry.'" *Wischer v. Comm'r of Soc. Sec.*, No. 1:13-cv-810, 2015 WL 518658, at *12 (S.D. Ohio Feb. 6, 2015), *report and recommendation adopted sub nom. Wischer ex rel. Ernst v. Comm'r of Soc. Sec.*, No. 1:13-cv-810, 2015 WL 1107543 (S.D. Ohio Mar. 11, 2015) (quoting *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014))). In *Forrest*, the court upheld the ALJ's step-three determination, despite the fact that the ALJ's supporting analysis was sparse, because the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Id*., 591 F. App'x at 366 (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("looking to findings elsewhere in the ALJ's decision to affirm a step-three medical equivalency

determination, and finding no need to require the ALJ to 'spell out every fact a second time'") and *Burbridge v. Comm'r of Soc. Sec.*, 572 F. App'x 412, 417 (6th Cir. 2014) (Moore, J., dissenting) ("acknowledging that an ALJ's step-three analysis was 'cursory' but suggesting that, under our precedent, it is enough for the ALJ to support his findings by citing an exhibit where the *exhibit* contained substantial evidence to support his conclusion") (emphasis in original)).

Here, the ALJ discussed Plaintiff's mental impairments in specific enough terms later in her decision to make her step-three determination that Plaintiff experienced only mild to moderate limitations as a result of her mental impairments clear.  For example, the ALJ considered Plaintiff's two rounds of inpatient mental health treatment in July and September 2015.  With regard to the July 2015 treatment, the ALJ noted that Plaintiff was assessed with a Global Assessment of Functioning (GAF) score of 25 at the time of admission, but Plaintiff's symptoms improved with medication, and upon release from the hospital five days later, a GAF score of 55 was assessed. (TR 171.)  "A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006) (citation and internal quotation marks omitted).  With regard to Plaintiff's September 2015 treatment, the ALJ pointed out that Plaintiff's symptoms improved with treatment and after five days Plaintiff was discharged from the hospital to a partial hospitalization program, during which Plaintiff's condition remained stable.  (TR 171.)  The ALJ also noted that Plaintiff did not complete that program and left against medical advice a few weeks later.  (TR 171.)  The ALJ further noted that the record does not document any additional formal mental health treatment.  (TR 171.)

The ALJ's discussion of the record evidence related to Plaintiff's mental impairments in evaluating Plaintiff's RFC sufficiently explains and clarifies the ALJ's step-three finding that Plaintiff's mental impairments pose only mild to moderate limitations. The ALJ's discussion is not so deficient as to preclude meaningful review and is supported by substantial evidence in the record. Notably, and as discussed in detail below, the ALJ's step-three determination is supported by the opinion of the state-agency psychologist. (*See* TR 214.) Plaintiff's Motion should therefore be denied with regard to this issue.

2.    *The ALJ's Assessment of the Medical Opinion Evidence*

Plaintiff argues that "[t]he ALJ erred by discounting the opinions of Plaintiff's former treating psychiatrists in favor of the opinion of a non-treating, non-examining, state agency consultant." (Docket no. 13 at 24-28; docket no. 18 at 6-9.) It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

Plaintiff's treating psychiatrists have very offered little in the form of opinion evidence, except for the GAF scores of 25 and 55 assessed by Kenneth Adler, M.D., and the GAF score of

50 assessed by Kutty Mathew, M.D.  (TR 477-78, 660.)  The ALJ acknowledged and assessed the

GAF scores as follows:

> As noted above, treatment records provided by Dr. Kenneth Adler and Matthew
> Kutty [sic], former treating psychiatrists, indicate GAF scores ranging from the 20s
> to the 50s (Ex. 1F and 5F).  20 CFR 416.927(d) provides that the undersigned
> consider the opinions of physicians of record and that controlling weight must be
> given to the medical opinion of a treating physician if it is well supported by
> medical evidence and if it is not inconsistent with other substantive evidence.  The
> undersigned notes that the GAF score is a subjective determination that represents
> the clinician's judgment of the individual's overall level of functioning.  GAF
> ratings are opinion evidence and need supporting evidence to give them weight.
> Unless the GAF rating is well supported and consistent with other evidence in the
> file, it does not provide a reliable longitudinal picture of a claimant's mental
> functioning for disability analysis.  In this case, the findings documented in the
> record reveal a moderate level of impairment due to the claimant's mental
> impairments.  Therefore, the GAF scores reported above, have been given little
> weight.

(TR 172.)

Plaintiff argues that the ALJ's analysis is perfunctory and insufficient under the regulations

and that the ALJ's "conclusory dismissal" of the GAF scores was incorrect.  (Docket no. 13 at 26.)

"A GAF score may help an ALJ assess mental RFC, but it is not raw medical data."  *Kennedy v.*

*Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007).  In fact, neither the Commissioner nor the Sixth

Circuit requires the Commissioner to give GAF scores any weight, and the Commissioner has

"'declined to endorse the [GAF] score for use in the Social Security and [Supplemental Security

Income] disability programs.'"  *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 716 (6th Cir. 2013)

(quoting *DeBoard v. Comm'r of Soc. Sec.,* 211 F. App'x 411, 415 (6th Cir. 2006)).  Thus, the ALJ

was under no obligation to credit the GAF scores assessed by Drs. Adler and Mathew, and the

little weight that she did assign to them is not erroneous.

Plaintiff argues that the GAF scores do provide a longitudinal picture of Plaintiff's

functioning and that they are supported by objective medical evidence – "namely the fact that

Plaintiff was hospitalized multiple times for periods of significant decompensation in mental functioning." (Docket no. 13 at 26.) But the record reflects that Dr. Adler treated Plaintiff for less than a week in July 2015, and Plaintiff was under the treatment of Dr. Mathew for a little under a month between September and October 2015, which are the only two times that Plaintiff was hospitalized for his mental impairments during the alleged disability period, according to the record. As the ALJ indicated, there is no record evidence that Plaintiff received formal mental health treatment after October 2015. Plaintiff's argument that the three GAF scores represent a longitudinal picture of Plaintiff's mental health functioning lacks merit where the scores were assessed over a period of three months, and that was the only time that Plaintiff received formal mental health treatment over the two-year period of alleged disability considered by the ALJ.

Plaintiff also argues that the ALJ's reasoning for discounting the GAF scores on the basis that "the findings documented in the record reveal a moderate level of impairment due to the claimant's mental impairments" is insufficient. (Docket no. 13 at 27.) He claims that "this shortcoming" flows from the ALJ's failure to explain her reasoning at step three. Plaintiff acknowledges that the ALJ later recited portions of the medical record related to his mental impairments, but he argues that recitation does not equal analysis. As discussed above, however, the ALJ's reasoning at step three of the sequential evaluation process, when read in conjunction with the ALJ's subsequent discussion of Plaintiff's mental health records, sufficiently explains and clarifies the ALJ's finding that Plaintiff's mental impairments posed only a moderate level of impairment.

Additionally, Plaintiff argues that the ALJ's analysis of the GAF scores did not address all of the regulatory factors. (Docket no. 13 at 27.) To the extent that the ALJ was required to consider the regulatory factors in her assessment of the GAF scores, there is no *per se* rule that requires an

articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  Nevertheless, the ALJ explicitly addressed most of the factors by noting that Drs. Adler and Mathew were Plaintiff's former treating psychiatrists (nature and extent of relationship, specialization), discussing the nature of the GAF scores (other), and finding the scores to be unsupported by and inconsistent with the record evidence showing a moderate level of impairment (supportability, consistency).  There is no error here.

Plaintiff further argues the ALJ erred by crediting the opinion of the state-agency psychologist, Blaine Pinaire, Ph.D., over the opinions of her treating psychiatrists.  Generally, the opinion of a treating source is entitled to greater weight than the opinion of a non-examining source.  20 C.F.R. § 404.1527(c).  However, the Social Security Administration has instructed that opinions from state-agency medical and psychological consultants may be entitled to greater weight than the opinions of treating or examining sources in appropriate circumstances, *e.g.*, where the treating source's opinion is not supported by the evidence.  SSR 96-6p, 1996 WL 374180, at *3; *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014) (citing *Gayheart* at 379–80). Here, Drs. Adler and Mathew only provided limited opinions regarding Plaintiff's GAF scores, which are not entitled to any deference, are not endorsed for use in the Social Security disability programs, and which the ALJ properly found to be unsupported by and inconsistent with the record evidence.  Conversely, Dr. Pinaire examined Plaintiff's complete medical record, assessed Plaintiff's mental impairments under the listings, assessed Plaintiff's mental RFC, and rendered an opinion regarding Plaintiff's functional limitations, which the ALJ found to be supported by

and consistent with the record. Under these circumstances, the ALJ appropriately assigned greater weight to Dr. Pinaire's opinion.

Plaintiff further argues that the ALJ failed to address Dr. Pinaire's opinion in accordance with the regulations. Social Security Ruling 96-6p states that an ALJ must consider the findings made by State agency medical consultants regarding the nature and severity of an individual's impairments as expert opinion evidence of a non-examining source. SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). The Ruling further states that ALJs are not bound by findings made by State agency physicians, but they may not ignore these opinions and must explain the weight given to these opinions in their decisions. *Id*. The opinions of State agency medical consultants "can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence . . . , [and] the consistency of the opinion with the record as a whole . . . ." *Id*.

The ALJ provided the following assessment of Dr. Pinaire's opinion:

Dr. Blain [sic] Pinaire, a State Agency psychologist, performed a psychiatric review of the medical evidence of record on March 7, 2017. Dr. Pinaire notes that the claimant's mental impairments cause the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listing. Dr. Pinaire notes mild limitation with regard to the ability to understand, remember, or apply information, moderate limitations with regard to interacting with others and moderate limitations with regard to the ability to concentrate, persist, or maintain pace and adapt or manage oneself (Ex. 1A and 2A).

Dr. Pinaire also provided an assessment of the claimant's functioning. Dr. Pinaire notes that the claimant is able to understand, remember, and carry out simple instructions; make judgments that are commensurate with the functions of unskilled tasks, i.e., work-related decisions; respond adequately to supervision, coworkers and work situations; and deal with most changes in a routine work setting. Dr. Pinaire notes some issues with concentration, but the claimant retains sufficient concentration to perform simple 1-2 step tasks, all on a routine and regular basis (Ex. 1A and 2A).

> The undersigned has given great weight to Dr. Pinaire's opinion.  The undersigned notes that the medical evidence of record reveals a moderate level impairment with regard to the claimant's mental impairments.

(TR 172.)  Here, while brief, the ALJ's assessment clearly indicates that she found Dr. Pinaire's opinion to be supported by and consistent with the record.  This is sufficient reason to give great weight to Dr. Pinaire's opinion under SSR 96-6p, particularly in light of the limited value of Dr. Adler's and Dr. Mathew's GAF scores and the absence of any other medical opinion evidence regarding Plaintiff's non-exertional limitations.  Accordingly, Plaintiff's Motion for Summary Judgment should be denied with respect to the ALJ's assessment of the medical opinion evidence.

### 3.    The ALJ's Consideration of Plaintiff's Bilateral Foot Condition

Plaintiff argues that the ALJ failed to properly address his bilateral foot condition.  (Docket no. 13 at 29-31.)  In the decision, the ALJ first addressed Plaintiff's testimony regarding his foot condition:

> At the hearing, the claimant reported a history of bilateral foot pain after a bucket was dropped on his feet in 2012.  The claimant reported that he was working in New York at that time and was doing repairs after Hurricane Sandy.  The claimant also reported undergoing surgery on his left foot, fusion/joint replacement, in August 2017.  The claimant testified that he would require a total of 3 surgeries on his right foot and one surgery on the left.

(TR 169.)  The ALJ also discussed the medical records related to Plaintiff's foot condition:

> The claimant also has a history of bilateral foot pain, due to an injury in 2012.  Treatment records do not indicate significant treatment related to this condition until 2016.  Treatment records provided by Dr. Jeffery Noroyan DPM on February 5, 2016 indicate complaints of tenderness and soreness in the right forefoot area, which was thought to be secondary to swelling of the "common digital nerve deep in the 2" & 3' interspace areas".  Dr. Noroyan also notes mild neuropathic discomfort in the ball of the foot.  Some mild forefoot edema was also noted on the plantar aspect of the foot beneath the metatarsal heads.  The claimant was treated with injection therapy (therapeutic nerve block) performed in the 2" & 3' interrnetatarsal [sic] spaces and along the course of the digital nerve to help reduce some of the swelling.  Dr. Noroyan notes that if conservative therapy failed "possible surgical intervention may be necessary in the future" (Ex. 7F, p. 8).  An MRI of the claimant's right foot performed on October 17, 2016 reveals no

evidence of fracture, with some mild degenerative changes of the first metatarsal phalangeal joint (Ex. 7F, p, 5).   Additional treatment records provided by Dr. Noroyan into 2017 reveal continued pain symptoms.   More recent treatment records provided by Noroyan on January 23, 2017 indicate pain and soreness heels of both feet.   Dr. Noroyan notes marked tenderness to palpation plantar medial calcaneal tuberosity of the bilateral heels and along the medial band of the plantar fascia of the mid arches.   No pain or paresthesia of the posterior tibial tendons or nerves was noted.   Dr. Noroyan recommended rest, ice, stretch, arch supports, and anti-inflammatory medication.   The claimant was treated with "a local injection for relief of pain and discomfort today" (Ex. 8F, p. 2).   The claimant testified that surgery was elected as treatment option with regard to his left foot, with a procedure performed on August 21, 2017.   The claimant also testified that he would require an additional 3 surgeries on his right foot.

(TR 170-71.)

Plaintiff argues that the ALJ's consideration of his foot condition is not supported by substantial evidence because the ALJ did not review or rely upon the medical records related to Plaintiff's August 21, 2017 foot surgery.   (Docket no. 13 at 29-30.)   Plaintiff's foot surgery occurred ten days before the administrative hearing.   At the hearing, Plaintiff's counsel explained that he had been unable to obtain the medical records of the surgery from the hospital in time for the hearing.   (TR 183.)   In response, the ALJ informed that she would take the hearing testimony and then make a decision on whether she needed the records and whether she would hold the case open post-hearing to wait for the records.   (TR 183.)   At the end of the hearing, Plaintiff's counsel asked the ALJ if she wanted to keep the case open in post.   (TR 206.)   The ALJ responded that she would not keep the case open, but if counsel received the records and wanted to submit them, she would consider the records if she received them before she issued her decision.   (TR 206).   Plaintiff's counsel replied, "Okay."   (TR 206.)

Plaintiff has not shown that the ALJ's failure to consider the medical records regarding his foot surgery constitutes reversible error.   In fact, it is evident that the ALJ considered Plaintiff's August 2017 surgery and his need for future foot surgeries (TR 169, 171), and she credited this

information by limiting Plaintiff to sedentary work (TR 171-72). Furthermore, Plaintiff has provided no information or analysis regarding the records of his foot surgery to show that the ALJ's review of those records would have resulted in additional functional limitations. Plaintiff's argument fails in this regard.

Plaintiff also argues that the ALJ erred because she did not address all of Plaintiff's testimony regarding his foot condition. (Docket no. 13 at 30.) Specifically, Plaintiff argues that the ALJ failed to address Plaintiff's testimony that his foot pain worsened in 2015, he experiences foot pain regardless of whether he is standing or sitting, he received only minimal relief from medication but some relief from elevating his feet, and his physicians linked Plaintiff's vagus nerve response to episodes of tremendous pain in his feet. (*Id*. (citing TR 189-98).) Plaintiff argues that the ALJ's failure to address this testimony, particularly the testimony regarding his need to elevate his feet, is critical and undermines the reliability of the ALJ's credibility determination. (*Id*. at 30-31.) This argument fails for two reasons.

First, "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)). Second, it is Plaintiff's burden to prove that he suffers from additional functional limitations as a result of his foot condition and that he has a more restrictive RFC than that assessed by the ALJ . *See Jones*, 336 F.3d at 474; *Her*, 203 F.3d at 391; *Jordan*, 548 F.3d at 423. Plaintiff cites his testimony that he needs to elevate his feet above his heart for most of the hours of the day between 8:00 a.m. and 5:00 p.m. (TR 197.) Plaintiff, however, has not cited any medical opinion evidence to support such a limitation. As the ALJ pointed out, in Dr. Noroyan's most recent treatment note in the record, he recommended rest, ice,

stretching, arch supports, and anti-inflammatory medication. (TR 171 (citing TR 857).) Moreover, there is no medical opinion in the record from Plaintiff's treating sources that assesses greater physical functional limitations than those assessed by the ALJ. The ALJ was not required to accept Plaintiff's subjective complaints, and she did not do so here. *See Jones*, 336 F.3d at 476.[1] Accordingly, Plaintiff's Motion should be denied with regard to this issue

### 4. *Plaintiff's Appointments Clause Challenge*

In his supplemental briefing, Plaintiff asserts that this matter should be remanded for a *de novo* administrative hearing because the original administrative proceeding was conducted by an ALJ that was not properly appointed under the Appointments Clause of the United States Constitution. (Docket no. 20.) Plaintiff raises this issue as a result of what he characterizes as an "important change in the controlling law" that "has significant implications for Plaintiff's claim for Social Security Benefits." (*Id.* at 4.) Specifically, Plaintiff relies on the decisions recently decided by the Supreme Court in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018) and the Sixth Circuit Court of Appeals in *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669 (6th Cir. 2018).

"The Appointments Clause of the Constitution lays out the permissible methods of appointing "Officers of the United States," a class of government officials distinct from mere employees." *Lucia*, 138 S. Ct. at 2049 (citing Art. II, § 2, cl. 2). In *Lucia*, the Supreme Court held that ALJs of the Securities and Exchange Commission, are "Officers of the United States," and they therefore must be appointed by the President, a court of law, or a head of department, in accordance with the Appointments Clause. *Id.* at 2055. The Court reiterated that the "'appropriate'

---

[1] To the extent that Plaintiff intends to state an argument in the last paragraph of his brief regarding the ALJ's comprehensive credibility determination, it will not be considered as Plaintiff has failed to develop any substantive legal argument in support. (*See* docket no. 13 at 30-31.) "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotation marks omitted).

remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official," *Id*. (quoting *Ryder v. United States,* 515 U.S. 177, 183, 188 (1995)), and added that that official cannot be the same official as before, even if he receives a constitutional appointment in the future, because "[h]e cannot be expected to consider the matter as though he had not adjudicated it before," *Id*.   In *Jones Bros.*, the Sixth Circuit held that the ALJs of the Federal Mine Safety and Health Review Commission are officers subject to the Appointments Clause and remanded the matter for a new hearing in accordance with *Lucia*.   898 F.3d at 679.

Plaintiff asserts that the Social Security Administration (SSA) quickly acknowledged that its ALJs are subject to the Appointments Clause and had therefore been unconstitutionally hired to preside over administrative hearings and that the Commissioner then acquiesced to the ruling in *Lucia* by correcting the constitutional defect in the ALJ hiring process by approving the ALJs' appointments as her own.   (Docket no. 20 at 5; docket no. 22 at 4 n.1.)   In support of this assertion, Plaintiff cites to an Emergency Message issued by the SSA to instruct ALJs and administrative appeals judges (AAJs) on how to address Appointments Clause challenges.   (*Id*. at 5 n.3 (citing https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM).)   The Emergency Message indicates that on July 16, 2018, the Acting Commissioner of Social Security "ratified the appointment of ALJs and AAJs and approved their appointments as her own in order to address any Appointments Clause questions involving SSA claims."   This language does not support Plaintiff's assertion.   As a court in this district recently stated, "the mere fact that the commissioner ratified the ALJ's appointments in response to *Lucia* does not constitute an admission that the appointments prior to the ratification were unconstitutional or that *Lucia*'s decision regarding SEC ALJ's is applicable to SSA ALJ's. Rather, the Commissioner simply took steps to head off future appointments clause challenges, irrespective of whether those future challenges would be

meritorious." *Gothard v. Comm'r of Soc. Sec.*, No. 1:17-cv-13638, 2019 WL 396785, at *3 (E.D. Mich. Jan. 31, 2019) (Ludington, J.).

Another court in this district discussed a memorandum released by the Solicitor General on July 23, 2018, which acknowledged that *Lucia* addressed only the "constitutional status" of ALJs for the SEC but indicated that "the Department of Justice understands the Court's reasoning...to encompass all ALJs in traditional and independent agencies who preside over adversarial administrative proceedings and possess the adjudicative powers highlighted by the *Lucia* majority." The memorandum instructed that going forward, "ALJs must be appointed (or have their prior appointments ratified) in a manner consistent with the Appointments Clause...." *Page v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 902, 903 (E.D. Mich. 2018) (Whalen, M.J.). This guidance issued by the Solicitor General could also support Plaintiff's assertion regarding SSA ALJs, but it is not binding legal authority. Moreover, it is well settled that Social Security proceedings are non-adversarial in nature. *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).

Defendant explicitly declines to argue whether SSA ALJs are subject to the Appointments Clause for purposes of this matter. (Docket no. 21 at 3 n.2.) But she does point out that the Supreme Court's decision in *Lucia* does not address the constitutional status of ALJs appointed under 5 U.S.C. § 3105, who, like SSA ALJs, do not possess powers equivalent to those of the SEC ALJs at issue in *Lucia*. (*Id.*) In a footnote, Plaintiff attempts to apply *Lucia* to SSA ALJs. He asserts that the Supreme Court made its decision in *Lucia* because ALJs exercise "significant discretion," which he claims is particularly relevant here because his substantive appeal in this case addresses the issue of whether the ALJ properly exercised her discretion in reviewing and weighing the record evidence. (Docket no. 20 at 5 n.2 (citing *Lucia*, 138 S. Ct. at 2053).)

Plaintiff's mere assertion in this regard minimalizes the extent of the examination and analysis of the nature of the SEC ALJs' duties that the Supreme Court performed in determining that those ALJs were officers subject to the Appointments Clause. *See Lucia*, 138 S. Ct. at 2051-55. And in the absence of any developed argument from Plaintiff on the subject, this court need not engage in such an examination here. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotation marks omitted) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."). Ultimately, Plaintiff has failed to show, through substantive legal argument or the presentation of binding legal authority, that the ALJ who presided over his administrative hearing was subject to the Appointments Clause or unconstitutionally appointed in violation thereof. This is fatal to Plaintiff's Appointments Clause challenge, and it should be denied on this basis alone. *See Gothard, supra*, 2019 WL 396785, at *3 (rejecting Appointments Clause challenge because the plaintiff's argument concerning the applicability of *Lucia* to SSA ALJs had no merit).

Even if the holding in *Lucia* does apply to the ALJs of the Social Security Administration, Plaintiff has forfeited his Appointments Clause challenge by failing to raise it in a timely manner. Appointments Clause "challenges are not jurisdictional and thus are subject to ordinary principles of waiver and forfeiture." *Jones Bros.,* 898 F.3d at 678 (citing *Freytag v. Comm'r*, 501 U.S. 868, 894 (1991) (Scalia, J., concurring in part and concurring in the judgment)). In *Jones Bros.*, the Mine Safety and Health Administration imposed civil penalties on the plaintiff for failing to comply with safety requirements, which penalties were upheld by an ALJ from the Federal Mine Safety and Health Review Commission. *Id.* at 672. The plaintiff mentioned the Appointments

Clause issue regarding ALJs to the Commission for the first time on review of the ALJ's decision, stating only that there was a split among the Circuit Courts of Appeals regarding whether ALJs not appointed by the President may constitutionally decide cases brought before them.  *Id*. at 673.

The Sixth Circuit held that the plaintiff forfeited its Appointments Clause challenge by failing to make or press an argument related thereto before the Commission.  *Jones Bros.,* 898 F.3d at 677.  The court also recognized, however, that the Mine Act's statutory exhaustion requirements allowed courts to excuse forfeiture "because of extraordinary circumstances."  *Id*.  The court noted that it was not prepared to say that the nature of an Appointments Clause challenge constituted an extraordinary circumstance, but it held that the absence of legal authority addressing whether the Commission could entertain the challenge did constitute an extraordinary circumstance.  *Id*.  The court characterized the plaintiff's statement to the Commission regarding the split of authority among the Circuit Courts on the Appointments Clause issue as "a reasonable statement from a petitioner who wishes to alert the Commission of a constitutional issue but is unsure . . . just what the Commission can do about it."  *Id*. at 678.  The court therefore excused the forfeiture, found that the Commission's ALJs were subject to the Appointments Clause, and held that the plaintiff was entitled to a new administrative hearing before a constitutionally appointed ALJ.  *Id*. at 677-79.

Plaintiff argues that *Jones Bros*. defined the "extraordinary circumstances" necessary to excuse an Appointments Clause forfeiture as "the lack of authority on the question of the constitutionality of ALJ appointments," and he argues that his failure to raise the issue before the SSA "should clearly be excused, given the extraordinary circumstances here."  (Docket no. 20 at 6; docket no. 22 at 8-9.)  Plaintiff misinterprets the *Jones Bros.* ruling.  As discussed above, *Jones Bros.* did not find that the lack of authority on the constitutionality of ALJ appointments

constituted "extraordinary circumstances;" it found that the lack of legal authority addressing whether the Commission could entertain Appointments Clause challenges constituted the "extraordinary circumstances" necessary to excuse the forfeiture under the Mine Act.  *See Jones Bros.,* 898 F.3d at 677.  Plaintiff's argument therefore fails in this regard.  Moreover, Plaintiff does not assert that the extraordinary circumstances that existed in *Jones Bros.* exist in this case.  That is, Plaintiff does not assert that his failure to assert an Appointments Clause challenge at the administrative level was due to his uncertainty regarding whether the ALJ or the Appeals Council had the authority to entertain or rule on such a claim.  Thus, to the extent that the *Jones Bros.* ruling regarding the extraordinary circumstances required to excuse a forfeiture under the Mine Act could be extended to forfeitures under the Social Security Act, *Jones Bros.* does not apply here.

In an about face, Plaintiff seemingly concedes that *Jones Bros.* does not apply to the forfeiture of issues under the Social Security Act by arguing that the ruling in *Jones Bros.* was based on the statutory exhaustion requirements of the Mine Act and that the Social Security Act does not contain such exhaustion requirements.  (Docket no. 20 at 7.)  In support of this argument, Plaintiff relies on *Sims v. Apfel*, 530 U.S. 103, 108 (2000), and correctly points out that "SSA regulations do not require issue exhaustion."  (Docket no. 20 at 7 (quoting *Sims*, 530 U.S. at 108).)  Plaintiff also argues that the Supreme Court in *Sims* declined to impose a judicial issue exhaustion requirement on Social Security proceedings because they are non-adversarial in nature.  (*Id*. (citing *Sims* at 109-10).)  Therefore, Plaintiff argues, he was not required to raise his Appointments Clause challenged before the administrative agency.  (*Id*.)

Plaintiff mischaracterizes the Supreme Court's ruling in *Sims*.  In *Sims*, the Supreme Court addressed the narrow issue of whether a social security claimant was required to exhaust issues for review before the Appeal Council.  530 U.S. at 107.  In analyzing the issue, the Court stated that

27

"[w]here . . . an administrative proceeding is not adversarial, . . . the reasons for a court to require issue exhaustion are much weaker" than in adversarial administrative proceedings. *Id*. at 110. The Court reasoned that those reasons are weakest in the area of Appeals Council review because the SSA regulations permit, but do not require, the filing of a brief with the Appeals Council, the Council's review is plenary unless it states otherwise, and the form used by a claimant to request a review before the Appeals Council provides only three lines for that request, which "strongly suggests that the Council does not depend much, if at all, on claimants to identify issues for review." *Id*. at 111-12. The Court therefore held that social security claimants "need not . . . exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Id*. at 112. In making this ruling, the Court explicitly noted that the issue of whether a claimant must exhaust issues before an ALJ was not before it. *Id*. at 107.

While the Supreme Court did not rule on the matter of judicial issue exhaustion at the ALJ level in *Sims*, some Circuit Courts of Appeals have held that a social security claimant waives any claims not raised before the ALJ. *See Anderson v. Barnhart,* 344 F.3d 809, 814 (8th Cir. 2003) (failure to raise a claim in an application for benefits or during the administrative hearing waives the claim); *Meanel v. Apfel,* 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"); *Howard v. Astrue,* 330 F. App'x 128, 130 (9th Cir. 2009) (holding that argument not raised before the ALJ is waived, without addressing whether the claimant was represented by counsel). The Sixth Circuit has found waiver on a slightly broader scale – when the social security claimant fails to bring her issue in the "proceedings before the agency." *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 416 (6th Cir. 2011); *Maloney v. Comm'r of Soc. Sec.,* 480 F. App'x 804, 809-10 (6th Cir. 2012) (ALJ and Appeals Council).

Additionally, courts in this district, including this Court, have also found waiver where the claimant failed to raise an issue at the hearing level. *See Gilbert v. Comm'r of Soc. Sec.*, No. 15-CV-11325, 2016 WL 8114195, at *7 (E.D. Mich. Apr. 29, 2016) (Majzoub, M.J.), *report and recommendation adopted*, No. 15-11325, 2016 WL 4072476 (E.D. Mich. Aug. 1, 2016); *Spuhler v. Colvin*, No. 2:13-CV-12272, 2014 WL 4855743, at *22 (E.D. Mich. June 17, 2014) (Morris, M.J.), *report and recommendation adopted in part*, No. 2:13-cv-12272, 2014 WL 4856153 (E.D. Mich. Sept. 30, 2014); *Motin v. Comm'r of Soc. Sec.*, No. 09-CV-13354, 2010 WL 1754871, at *8-9 (E.D. Mich. Apr. 6, 2010) (Binder, M.J.), *report and recommendation adopted,* No. 09-13354, 2010 WL 1754821 (E.D. Mich. Apr. 30, 2010). In all of these cited cases, the issues deemed waived were directly related to the claimants' claims of entitlement to benefits.

In the recent wave of Appointments Clause challenges to the ALJs of the Social Security Administration, the overwhelming majority of courts nationwide are aligned with the cases cited above – rejecting Appointments Clause challenges not raised at the administrative level as untimely and either forfeited or waived. *See, e.g.*, *Stearns v. Berryhill*, No. C17-2031-LTS, 2018 WL 4380984, at *5-6 (N.D. Iowa Sept. 14, 2018); *Davidson v. Comm'r of Soc. Sec.*, No. 2:16-cv-00102, 2018 WL 4680327, at *2 (M.D. Tenn., Sept. 28, 2018); *Gothard v. Comm'r of Soc. Sec.*, No. 1:17-cv-13638 (E.D. Mich. Oct. 10, 2018); *Page v. Comm'r of Soc. Sec.*, 344 F.Supp.3d 902 (E.D. Mich. Oct. 31, 2018); *Flack v. Comm'r of Soc. Sec.*, No. 2:18-cv-501, 2018 WL 6011147, at *3 (S.D. Ohio Nov. 16, 2018); *Faulkner v. Comm'r of Soc. Sec.*, No. 1:17-cv-01197-STA-egb, 2018 WL 6059403, at *3 (W.D. Tenn. Nov. 19, 2018); *Abbington v. Berryhill*, No. 1:17-00552-N, 2018 WL 6571208, at *9 (S.D. Ala. Dec. 13, 2018); *Velasquez on Behalf of Velasquez v. Berryhill*, No. 17-17740, 2018 WL 6920457, at *3 (E.D. La. Dec. 17, 2018), *report and recommendation adopted*, No. 17-17740, 2019 WL 77248 (E.D. La. Jan. 2, 2019); *A.T. v. Berryhill*, No. 17-4110-

JWB, 2019 WL 184103, at *7 (D. Kan. Jan. 14, 2019); *Shipman v. Berryhill*, No. 1:17-cv-00309-MR, 2019 WL 281313, at *3 (W.D.N.C. Jan. 22, 2019).  *But see Muhammad v. Berryhill*, No. 18-172 (E.D. Pa., Nov. 2, 2018); *Fortin v. Comm'r of Soc. Sec.*, No. 18-10187, 2019 WL 421071 (E.D. Mich. Feb. 1, 2019).

However, the Supreme Court has suggested, albeit in addressing the exhaustion of administrative remedies under the Social Security Act, 42 U.S.C. § 405(g), that failure to raise a constitutional claim before the Social Security Administration may not result in the forfeiture or waiver of that claim.  In *Mathews v. Eldridge*, the Court recognized an exception to the exhaustion of administrative remedies requirement for colorful constitutional claims collateral to the substantive claim for entitlement of benefits.  424 U.S. 319, 328-33 (1976).  In discussing the propriety of this exception, the Court discussed the futility of a constitutional challenge at the administrative level, reasoning that "[i]t is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context" and that "[t]he Secretary would not be required even to consider such a challenge."  *Mathews*, 424 U.S. at 330.  Significantly, the Court also noted that a social security claimant's failure to raise his constitutional claim at the administrative level would not bar him from asserting it later in a district court, regardless of whether he exhausted his administrative remedies.  *Id.* at 329 n.10.

The Supreme Court reaffirmed its decision in *Mathews* shortly thereafter.  In *Califano v. Sanders*, the Court described the *Mathews* decision as an application of the "well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the 'extraordinary' step of foreclosing jurisdiction unless Congress' intent to do so is manifested by 'clear and convincing' evidence."

430 U.S. 99, 108-09 (1977) (citations and internal quotation marks omitted).  The Court reasoned that "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions."  *Id.* at 109.  While *Mathews* and *Califano* involve jurisdictional issues related to the statutorily-prescribed exhaustion of administrative remedies under the Social Security Act, their principles and analysis are easily transferable to the instant matter of whether judicial issue exhaustion requirements exist at the ALJ level with regard to constitutional claims, and they suggest that such requirements should not exist.

Nevertheless, the undersigned need not attempt to resolve this issue, because Plaintiff failed to raise his Appointments Clause challenge in a timely manner before the court.  In *Lucia*, the Supreme Court made clear that "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief."  *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder*, 515 U.S. at 182-83).  Here, Plaintiff did not raise his Appointments Clause challenge in his Motion for Summary Judgment or in his reply brief in support of his Motion for Summary Judgment; he raised it in supplemental briefing filed seven months after he filed the Complaint in this matter and four months after he filed his Motion for Summary Judgment.  (*See* docket nos. 1, 13, 18, 20.)  It is well settled that arguments not raised in a party's initial brief are untimely and procedurally improper.  *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993).  Supplemental briefs provide litigants an opportunity to inform the court about late authorities, new legislation, or other matters not available at the time of the original brief; they "do not provide an opportunity to convert review of an agency order into a broadbased statutory and constitutional attack."  *Plaquemines Port, Harbor & Terminal Dist. v. Fed. Mar. Comm'n*, 838 F.2d 536, 550-

51 (D.C. Cir. 1988).  Here, Plaintiff's brief is not supplemental but an attempt to raise an argument that he should have raised in his initial brief.  Likewise, Plaintiff's argument that he could not have raised the Appointments Clause challenge until after *Lucia* and *Jones Bros.* were decided in June and July of 2018, respectively, is unavailing.  A recent decision issued by the Sixth Circuit holding that an Appointments Clause challenge was forfeited because the plaintiff failed to raise it in its opening brief is instructive here:

> Island Creek also cannot hold the line on the ground that its Appointments Clause challenge lacked merit until the Supreme Court decided *Lucia v. Securities & Exchange Commission*, ⸺ U.S. ⸺, 138 S.Ct. 2044, 201 L.Ed.2d 464 (2018). No precedent prevented the company from bringing the constitutional claim before then. *Lucia* itself noted that existing case law "says everything necessary to decide this case." *Id.* at 2053. The Tenth Circuit, before *Lucia*, held that administrative law judges were inferior officers. *Bandimere v. SEC*, 844 F.3d 1168, 1188 (10th Cir. 2016). And many other litigants pressed the issue before *Lucia*. *See, e.g.*, *Tilton v. SEC*, 824 F.3d 276, 281 (2d Cir. 2016); *Bennett v. SEC*, 844 F.3d 174, 177–78 (4th Cir. 2016); *Burgess v. FDIC*, 871 F.3d 297, 299 (5th Cir. 2017); *Jones Bros.*, 898 F.3d at 672. That the Supreme Court once denied certiorari in a similar Appointments Clause case adds nothing because such decisions carry no precedential value. *See Teague v. Lane*, 489 U.S. 288, 296, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). All in all, Island Creek forfeited this Appointments Clause challenge, and we see no reasoned basis for forgiving the forfeiture.

*Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 257 (6th Cir. 2018).  *See also Intercollegiate Broad. Sys. v. Copyright Royalty Bd.*, 574 F.3d 748, 755-56 (D.C. Cir. 2009) (declining to address Appointments Clause challenge to the Copyright Royalty Board members raised in supplemental briefing because it was "untimely"); *Dierker v. Berryhill*, No. 18cv145-CAB(MSB), 2019 WL 246429, at *4 (S.D. Cal. Jan. 16, 2019), *report and recommendation adopted*, No. 18cv145-CAB-MSB, 2019 WL 446231 (S.D. Cal. Feb. 5, 2019) (Appointments Clause challenge to SSA ALJ untimely where plaintiff did not raise it in his motion for summary judgment or reply brief in support thereof but for the first time in a subsequent letter brief).

To the extent that Plaintiff alleges that exceptional circumstances exist to excuse the forfeiture, *Island Creek* provides further guidance:

> Appointments Clause challenges, true enough, arise under the U.S. Constitution, making them special in one sense. But that does not make them special in this sense. We are not alone in refusing to consider constitutional challenges when the appellant failed to raise them in the opening brief. *See, e.g., Am. Trim, LLC v. Oracle Corp.*, 383 F.3d 462, 478 (6th Cir. 2004); *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 574 F.3d 748, 755 (D.C. Cir. 2009). The obligation to identify the issues on appeal in the opening brief applies to arguments premised on the loftiest charter of government as well as the most down to earth ordinance.
>
> None of the explanations for excusing a forfeiture applies. This challenge does not affect our jurisdiction. As we recently explained, Appointments Clause challenges are "not jurisdictional and thus are subject to ordinary principles of waiver and forfeiture." *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 678 (6th Cir. 2018).
>
> Nor has Island Creek identified any "exceptional circumstances" for looking the other way. *Freytag v. Comm'r*, 501 U.S. 868, 894, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (Scalia, J., concurring in part and concurring in the judgment); *see also id.* at 879, 111 S.Ct. 2631 (majority opinion) (holding that the Supreme Court may excuse forfeiture in "rare cases"). That we entertained an Appointments Clause challenge in *Jones Brothers* does not help Island Creek. In that case, we dealt with the subsidiary question whether the claimant must preserve his argument in the administrative process. Today's barrier is that Island Creek did not raise the claim in its opening brief *here*. No such problem infected the *Jones Brothers* case.

*Island Creek*, 910 F.3d at 256.  In light of the above, Plaintiff's Appointments Clause challenge should be deemed forfeited as untimely.

## VI.      CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 13) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 17).

## <u>REVIEW OF REPORT AND RECOMMENDATION</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided

for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  February 14, 2019          s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  February 14, 2019          s/ Leanne Hosking
                                   Case Manager